JiLOTTINGER, Chief Judge.
This case concerns the rights of a holder of a first mortgage with respect to actions tak *972 en and revenues collected by a keeper appointed by a holder of a second mortgage.
FACTS
The plaintiff in this suit, W.A.C., Inc. (W.A.C.), is the current owner of a first mortgage on a group of apartment buildings known as The Redwood Apartments (Redwood). It brought suit to foreclose on the mortgage by executory process. W.A.C. also sought to have the keeper appointed by the second mortgagee replaced by its own, to have the second mortgagee’s keeper held liable for tax penalties it incurred due to his failure to pay taxes, and to force the keeper appointed by the second mortgagee to turn over the rental income he collected during his tenure.
The essential facts in this case are not in dispute. A group of buyers purchased Redwood, mortgaged it, then sold it to a second buyer who assumed the first mortgage, took out a second mortgage, and then defaulted. Upon default, the |2holder of the second mortgage brought suit on its note and had a keeper appointed to administer the property. Approximately two years after the owners defaulted, the first mortgage was sold to W.A.C., which then took the present actions to enforce the mortgage. A brief chronology is necessary to describe the chain of events leading up to this suit:-
March 7, 1974: First mortgage recorded by Capital Bank and Trust Company in the amount of $204,350.00.
April 12, 1977: Second mortgage recorded by Margaret Vondell Ogden Rogers Trust (Trust) to secure a promissory note in the amount of $54,630.60.
May 27, 1988: The holder of the second mortgage, upon mortgagor’s failure to make required payments, secured a judgment appointing J. Randolph Ogden as keeper of the property subject to the mortgage.
October 25, 1988: Trust secured a judgment on the note secured by the mortgage and a recognition of its lien and privilege on the property.
July 15, 1991: First mortgage assigned and transferred from F.D.I.C. to W.A.C.
December 12, 1991: W.A.C. filed suit on the note secured by the mortgage.
December 16, 1991: Trust secured a writ of garnishment over the rental income collected by its keeper.
ACTION OF THE TRIAL COURT
The trial court recognized W.A.C.’s mortgage and right to executory process. The property was seized by W.A.C. on May 1, 1992. The trial court also allowed W.A.C. to appoint its own keeper and revoked the order of sequestration and appointment of keeper previously granted to the second mortgagee. Apparently, the aforementioned actions were ruled upon ex parte on January 14, 1992.
The trial court ordered a hearing on the issues relating to the liability of the second mortgagee’s keeper to the first mortgagee and the right to the rental payments collected by the second mortgagee’s keeper.
IsThe trial court ruled that the keeper appointed by the second mortgagee is appointed for the benefit of the second mortgagee and that the revenues collected in excess of expenses are for the benefit of the second mortgagee. The court further held that the keeper owed no duty to the first mortgagee as the relief of the first mortgage holder is to seize and sell the property.
ASSIGNMENTS OF ERROR
In appealing, W.A.C. assigns the following errors:
1. The trial court erred by ruling that a keeper appointed pursuant to La.R.S. 9:5137 et. seq. may pay rents collected during sequestration to a second mortgagee in preference to the first mortgage.
2. The trial court erred by allowing an inferior creditor to sequester and retain rents and revenues when a superior creditor has a recorded mortgage containing a mortgage and assignment of rents.
3. The trial court erred by ruling that a keeper’s failure to act as a prudent administrator in not paying property taxes does not cause loss to the first mortgagee who is *973 forced to pay penalties on those taxes to enforce the first mortgage.
I
W.A.C. argues that according to La. R.S. 9:5138 rental income collected by the second mortgagee’s keeper should be applied to the debt secured by the first mortgage. The specific language which W.A.C. cites is, “[a]ll revenues or other accounts received by the keeper during his administration first shall be applied to the costs and expenses incurred by him in the administration or preservation of the property, and any balance shall be applied to the debt secured by the mortgage.” W.A.C. further argues that this language, read in pari materia with the civil code articles on ranking of mortgages, leads to the conclusion that the rents belong to the first mortgagee. Specifically, W.A.C. cites La.Civ.Code art. 3397 as authority for the proposition that a. mortgagee, from the date of registry, has the benefit of being Upreferred to mortgagees whose registry is posterior.[1]
It is the position of W.A.C. that the ruling of the trial court creates a conflict between the civil code articles and the revised statutes in that the Code gives preference to the first mortgagee and the court’s interpretation of La.R.S. 9:5138 gives preference to the second mortgagee. It is W.A.C.’s contention that the trial court’s ruling undermines the policy behind chronological ranking and encourages inferior mortgagees to sequester property, collect rents and reduce its claim before foreclosing under its mortgage.
Initially, we note that the trial court’s ruling is in apparent agreement with the legislative intent in adopting the keeper statutes. La.R.S. 9:5137, which provides for the appointment of a keeper, states, in part, that “[t]he designation of a keeper of the property in accordance with the provisions of R.S. 9:5136 is for the benefit of the seizing credi-tor_” Furthermore, the civil code articles addressing the ranking of mortgages pertain to the priorities of creditors to act upon the property and to receive the proceeds from the seizure and sale of the property. See, La.Civ.Code art. 3307(1) and (3). The code articles do not address the right to receive income from the property when seized by an inferior creditor, and therefore, we find no conflict between the Revised Statutes and the Code.
II
W.A.C. also argues that under a writ of sequestration the seizing creditor acts for the benefit of all creditors until there is an adjudication of creditors’ rights. It contends that sequestration does not create a privilege or right to the thing sequestered but merely preserves the property. While this argument may be valid in a typical sequestration setting, in this case the keeper statutes specifically provide that sequestration and appointment of a keeper provide a means of enforcing a mortgage and that the sequestration operates for the benefit of the seizing creditor. La.R.S. 9:5137 A. We, therefore, find that the rental income collected by the keeper 15appointed by the second mortgagee inures to the benefit of the second mortgagee until such time as a superior creditor takes action to enforce its claim. This holding is consistent with the persuasive authority contained in 59 C.J.S. Mortgages § 320 (1949) which states:
A second mortgagee may obtain control of the rents and profits by taking possession of the premises either personally or through a receiver, but in this case the first mortgagee will ordinarily be entitled to assert a superior claim to the rents and profits by intervening in the suit brought by the junior mortgagee or by filing his own bill of foreclosure. Unless and until the senior mortgagee thus actively proceeds to subject the rents and profits to his mortgage, they will belong to the second mortgagee, as the senior mortgagee will not be allowed to take advantage of the diligence of the junior mortgagee. [Footnotes omitted.]
W.A.C. further argues that it is entitled to the rental income collected by the second *974 mortgagee’s keeper as its mortgage so provides. W.A.C. claims that the following clauses contained in the mortgage give it a right to the rents collected:
All easements, rights, appurtenances, rents, royalties .... and profits ... now or hereafter attached to the property ... shall be deemed to be and remain a part of the property covered by this mortgage....
As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under Paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.
W.A.C. argues that under the terms of the mortgage it has both a mortgage on and an assignment of the rental income of the property subject to the mortgage. The above reference to Paragraph 17 pertains to a mandatory thirty day notice of breach which must be given to the borrower by the lender.
In support of its contention that the rental income is subject to a mortgage, W.A.C. points to La.Civ.Code arts. 3289 and 3290 (West 1991) and Jay’s Commercial Carpets, Inc. v. Magna Interests, Inc., 559 So.2d 1348 (La.1990), for the proposition that rents may be validly subjected to a mortgage. La.Civ. Code art. 3289 provides that “[ijmmovables subject to alienation, and their accessories 1 (¡considered likewise as immovables” are susceptible of being mortgaged. La.Civ.Code art. 3290 provides the definition of a mortgage contract as one where a person may bind the whole of his property. In Jay’s Commercial Carpets, the supreme court found rents from immovable property to be incorporeal immovables, 559 So.2d at 1349. As such, W.A.C. argues, the rents are susceptible of being mortgaged.
In Jay’s Commercial Carpets, the issue before the court was not whether rents from immovable property were subject to a mortgage but whether an assignment of rents to a savings and loan filed in the mortgage records was effective against third parties. Therefore, Jay’s Commercial Carpets is not on point.
Assuming, for the sake of argument that a clause mortgaging rents is enforceable, we find that this particular clause does not accomplish this purpose. First of all, if the rents were subject to the mortgage, the clause relating to the assignments of rent would be superfluous. Also, the fact that the debtor, by the terms of the mortgage, is allowed to collect the rents until acceleration by the lender leads us to the conclusion that the parties did not intend that the rents be subject to the mortgage. It appears to us that the parties intended a conditional assignment of rents and not an absolute mortgage of rents.
As for the clause assigning rents to the lender, we find that the assignment was conditional, and we find no evidence in the record, other than W.A.C.’s eventual fifing of suit, that notice of acceleration was given to the debtor. As such, W.A.C., as holder of the first mortgage, is entitled to enforce the assignment only from the point in time which it complied with the condition of acceleration. That is, W.A.C. has a right to collect and retain the rents only after acceleration of the note. Since there is no evidence that W.A.C. accelerated the note prior to the fifing of suit, the trial court was correct in finding the rental income inured to the benefit of the second mortgagee during the time period the property was controlled by its keeper.
Ill
Finally, W.A.C. argues that it is entitled to reimbursement for the tax |7penalties incurred for the failure of the second mortgagee’s keeper to pay property taxes. The basis of W.A.C.’s argument is that the keeper failed to act as a prudent administrator as required by La.R.S. 9:5138, and as such is liable to it for such transgression. The trial court found that the keeper owes a duty only to the creditor who appoints him and as such may not be held liable to a third party. W.A.C. failed to cite any authority for holding a keeper appointed by one creditor liable to another. W.A.C.’s remedy, and the remedy of all superior mortgage holders, is to seize and sell the property in the event of default. The fact that a portion of the proceeds of the sale of the property must be *975 paid in tax penalties is due to the lack of diligence by the holder of the first mortgage. If it had acted timely, no tax penalties would have been incurred. We, therefore, find that in this case, the second mortgagee’s keeper owed no duty to the first mortgagee and cannot be held liable.
Therefore, for the above and foregoing reasons the judgment of the trial court is affirmed at plaintiff-appellant’s costs.
AFFIRMED.

. La.Civ.Code art. 3397 was revised in 1992. La.Civ.Code art. 3307 reproduces the substance of the former article.